IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ARCHIE ROBERT BEAR,                )
                                   )    No. 4:08-cv-00180-RAW
              Petitioner,          )
                                   )
vs.                                )    FINDINGS AND
                                   )    ORDER FOLLOWING REMAND
JOHN FAYRAM, Warden,               )
Anamosa State Penitentiary,        )
                                   )
              Respondent.          )

        This is a petition for writ of habeas corpus brought by

a state prisoner pursuant to 28 U.S.C. § 2254. Judge Gritzner on

initial review dismissed the case as untimely under the one-year

habeas limitation period adopted by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244(d)(1). The

Eighth Circuit vacated the judgment and remanded to this Court for

"further development of the record to determine whether the state

created an impediment that prevented the petitioner from filing a

timely federal habeas petition within the meaning of 28 U.S.C. §

2244(d)(1)(B) by failing to provide access to the AEDPA limitation

statute." *Bear v. Burt*, No. 08-2725, Judgment (8th Cir. 4/6/2009).

Section 2244(d)(1)(B), where applicable, statutorily tolls the one-

year limitation period. Respondent has filed a motion to dismiss

[30] which petitioner has resisted.

        Counsel was appointed for petitioner on remand. The

undersigned was assigned the case pursuant to 28 U.S.C. § 636(c).

Evidentiary hearing by means of the Iowa Communications Network

(ICN), a telecommunications system, was held on December 21, 2009.[1] The Court and counsel were present at the U.S. Courthouse in Des Moines. Petitioner was present in a hearing room at the Anamosa State Penitentiary (ASP). The locations were connected by audio and visual connection. Post-hearing statements and supplemental exhibits were filed. The matter is fully submitted.

## I.

### PROCEDURAL AND FACTUAL BACKGROUND

On January 28, 2000 an Iowa jury found petitioner Archie Robert Bear guilty of murder in the second degree, in violation of Iowa Code §§ 707.1 and .3. The Iowa District Court for Poweshiek County entered its judgment on the verdict on February 28, 2000 and sentenced Mr. Bear to a term not to exceed 50 years.

Mr. Bear filed a notice of appeal on March 28, 2000. The Iowa Court of Appeals affirmed his conviction on March 28, 2001. *State v. Bear*, 2001 WL 293523 (Iowa App. 3/28/2001). His application for further review was denied by the Iowa Supreme Court on June 15, 2001. The parties agree the one-year AEDPA limitations period began to run on September 13, 2001 with the expiration of the time to petition for a writ of certiorari in the U.S. Supreme Court. *See Curtiss v. Mount Pleasant Corr. Facility*, 338 F.3d 851, 853 (8th Cir.), *cert. denied*, 540 U.S. 1060 (2003).

---

[1] The Eighth Circuit judgment left it to this Court to determine whether the record was best developed by a courtroom hearing, or use of the mails or telecommunication.

Following his sentencing, Mr. Bear was incarcerated at the Iowa State Penitentiary ("ISP") in Fort Madison, Iowa, from April 2000 to November 2001. While an inmate there, Mr. Bear was a plaintiff in two inmate § 1983 lawsuits filed in 2001, both involving the "Red Star" inmate legal communication system (*Overton v. Galloway*, 4:01-cv-40225 and *Stringer v. Kautzky*, 4:01-cv-40456). *Stringer* was later consolidated with *Overton* and on appeal was captioned *Bear v. Kautzky*, 305 F.3d 802 (8th Cir. 2002). From September 28, 2001 Mr. Bear and the other plaintiffs were represented by appointed counsel.  In November 2001 Mr. Bear was transferred from ISP to ASP.

From 1999 to the present, the Iowa Department of Corrections has contracted for legal services for inmates at ASP (and other correctional facilities within the state) through the State Public Defender's Office. (Resp. Ex. Z). Between July 1, 2001 and June 30, 2002, the contract attorneys for ASP were John J. and Mary Lynn Wolfe, from July 1, 2002 to July 31, 2002 Mr. Wolfe alone, and from July 1, 2002 to June 30, 2003 Scott Sobel and Ryan Geiser. (*Id.* at 24-30). While Mr. Bear was at ISP the contract attorney was Timothy Goen. (*Id.* at 18). By the terms of the contracts, the attorneys agreed to "assist offenders . . . who seek legal advice or wish to file pleadings in the following areas:"

1.   Notices of appeal in Criminal Cases;
2.   Petitions for postconviction relief;
3.   Petitions for habeas corpus
4.   Complaints pursuant to 42 U.S.C. § 1983;

3

5.   Challenges of restitution under Iowa Code
     section 910.7;
6.   Requests for appointment of counsel; and
7.   Other pleadings and motions concerning the
     inmate's criminal case or conditions of
     confinement.

(*Id.* at 26, 28). The attorneys were to be present at ASP at least

twice monthly and promised to meet with offenders within 30 days of

being made aware of a request for a conference. (*Id.*) They agreed

to provide specific services, including interviewing offenders and

advising them about the "prerequisites to filing" habeas corpus

petitions among other things. (*Id.* at 25, 29). The attorneys were

not, however, obligated to do legal research. The activities of the

contract attorneys, specifically Mr. Wolfe, were summarized in

*White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007), and in greater

detail in the underlying district court opinion at 386 F. Supp. 2d

1042, 1054-55 (N.D. Iowa 2005).

     Jeffrey Ditch was the head librarian at the ASP library

until at least January 2001.[2] By deposition he testified that in

approximately 2000 or 2001 the state stopped updating the books in

the legal resource room (law library) at ASP and inmates were

directed to seek assistance from the contract attorneys. (Resp. Ex.

L, Ditch Depo. at 10-11).

---

[2] Though he thought he left in 2001, Mr. Ditch probably worked
at the ASP library until January 2002. His services were paid for
through January 2002. (Resp. Ex. M). Mr. Ditch was an employee of
Kirkwood Community College, which supplied educational services to
ASP, including library services. (Resp. Ex. L, Ditch Depo. at 23).

4

From November 2001 until February 2002 the ASP law library was closed while it was moved to another building. During that time period many books were destroyed or put in storage. A formal inter-library loan program was discontinued in January 2002. (Resp. Ex. AA). Mr. Ditch did not know how the library was run after he left, only that it was closed for a period of time. (Resp. Ex. L, Ditch Depo. at 26-27). He described how books were initially marked as they came into the library, prepared for circulation and subsequently checked out, with stamps for return dates on the inside covers of books.

For the first thirty days after his November 2001 transfer to ASP, Mr. Bear was in orientation -- apparently a secure status -- and did not have access to the prison law library. Mr. Bear was aware of the principle that he had to exhaust his remedies in state court before filing a federal habeas petition. He testified that in the spring of 2002 as he prepared to initiate a *pro se* state court postconviction relief (PCR) application he contacted attorney James Piazza, Sr. to ascertain time lines for filing all federal and state challenges to his conviction. (Resp. Ex. A).[3] He said it was his understanding from Mr. Piazza that he had three years from the last appellate court decision on his direct appeal to file his state PCR application, and then one year

---

[3] Mr. Piazza had represented Mr. Bear on direct appeal and was later retained by Mr. Bear to handle his PCR application.

5

after all PCR proceedings through appeal were completed to file for federal habeas relief. (*Id.*) By affidavit, Mr. Piazza denies discussing with Mr. Bear "anything concerning the statute of limitations for, or time lines relating to, federal habeas corpus actions." (Resp. Ex. I).

Mr. Bear says that after speaking to Mr. Piazza in the spring of 2002 he went to the law library at ASP to check the time lines Mr. Piazza had given him. There he obtained a 1994 volume of 28 U.S. Code Annotated containing sections 2201 to 2253, but with no pocket parts. The AEDPA one-year limitation period was not enacted until 1996. Mr. Bear testified the 1994 volume confirmed what Mr. Piazza had told him.

There is a dispute about whether copies of the West publication of the 1997 and 1998 Federal Civil Judicial Procedure and Rules (Civil Rules) and the 1998 Federal Criminal Code and Rules (Criminal Rules), both of which contain the AEDPA one-year limitation period, were in the ASP law library in the spring of 2002. Mr. Bear says they were not. Carol Husmann, a Kirkwood Community College office coordinator who supervised various educational activities at ASP involving the library (*see* n.2 *supra*), states by affidavit that in 2005 she located one copy of the 1991, and two copies each of the 1997 and 1998, editions of the Civil Rules in the ASP library. (Def. Ex. P). Check-out cards for these volumes (except one of the 1998 Civil Rules books), attached

to Ms. Hussman's affidavit, bear dates in late 2001 and the spring of 2002, though the volumes are stamped "<u>Not</u> for checkout." (*Id.* (emphasis original)). The 1991 edition would not, of course, have contained the AEDPA one-year limitation period. An ASP inmate, Robert Williams, has provided an affidavit stating he saw copies of the 1998 Civil and Criminal Rules in the ASP law library in 2002 after the law library had moved from its previous location.[4] (Resp. Ex. O).

Mr. Bear testified that the weekend before the hearing he obtained a "Book List" from the ASP law library captioned "Inventory as of 12/09/02" listing numerous legal publications with handwritten notations. (Pet. Ex. 4). The list includes the "1998 FED. CIV. JUD. PRO. AND RULES BOOK B." (*Id.* at 21). Also included are a number of "Reserved" items with no titles but beside one of which is written: "FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES 199" (no fourth numeral). (*Id.* at 17). Near the end of the list is a category of "CANNOT CHECK OUT BOOKS" which does not describe titles. (*Id.* at 21). The authenticity and completeness of the list are uncertain.

From this conflicting, and somewhat confusing, evidence the Court finds both the AEDPA and outdated versions of the relevant habeas corpus statutory provisions were in the ASP law

---

[4] Mr. Williams could not say that the photocopies of the book covers attached to his affidavit were of the exact books he saw.

library after it reopened in about February 2002. There is no reason to believe Ms. Hussman and Mr. Williams would provide false or erroneous information, the date stamps in the 1991, 1997 and 1998 rule books are probative of the point, and the book list provided by Mr. Bear provides some support.

Mr. Bear "kited" the ISP contract attorney, but did not speak to him. He apparently obtained a state PCR form. After his transfer to ASP Mr. Bear did not ask to see the contract attorney until November 2006. A sign in the legal resource center said the contract attorney would not do legal research. Because the contract attorney would not do research, Mr. Bear saw no use in meeting with the attorney. He appears to have assumed the contract attorney would not provide him with information about the federal habeas limitation period.

Mr. Bear did not file his first state court PCR application until June 25, 2004 by which time the AEDPA one-year limitation period had expired. The court denied his application on June 2, 2006. Mr. Bear appealed on June 23, 2006. On June 13, 2007 the Iowa Court of Appeals affirmed the denial of postconviction relief. *Bear v. State*, 2007 WL 1689434 (Iowa App. 6/13/2007). The Iowa Supreme Court denied Mr. Bear's application for further review on June 29, 2007.

Mr. Bear filed his federal habeas petition on May 1, 2008 in the Northern District of Iowa. The case was transferred to this district on May 6, 2008.

## II.

### DISCUSSION

#### A.

Preliminarily, it is appropriate to be clear about the scope of what is before the Court. Petitioner asserts the Court should address the issue of equitable tolling, an issue considered and rejected in this Court's initial review order of July 8, 2008 [12]. Mr. Bear would have the Court then proceed to address the merits of his petition. Respondent has filed a motion to dismiss [30] alleging that the petition is time-barred and that all but three of petitioner's claims were procedurally defaulted.

The court of appeals' judgment and mandate remanded the case to this Court to further develop the record with respect to the § 2244(d)(1)(B) statutory tolling issue described in the judgment. The mandate returned jurisdiction to this Court only for this purpose. *See* 20 *Moore's Federal Practice* § 341.12[3] at 341-8 - 341-9 (3d ed. 2009). That is all that is before the Court.

#### B.

Under AEDPA "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by" a state prisoner. 28 U.S.C. § 2244(d)(1). It ordinarily begins to run when the

criminal judgment is final "by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). However, the period is statutorily tolled until "the date on which the impediment to filing an application created by State action in violation of the Constitution . . . of the United States is removed, if the applicant was prevented from filing by such State action." *Id.* § 2244(d)(1)(B). It is tolled as well during the time a properly-filed state PCR application is pending, *id.* § 2244(d)(2), but the one-year clock is running between the time direct review of a conviction is completed and the state PCR application is filed. *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001); *see Boston v. Weber*, 525 F.3d 622, 624-26 (8th Cir. 2008)(reaffirming *Painter*).

"The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007)(citing *Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989)). This "fundamental constitutional right . . . requires prison officials to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Prison officials' failure to afford adequate legal assistance to a state prisoner to file a federal habeas petition could qualify as an unconstitutional, state-created impediment which would toll the AEDPA limitation

10

period. Three federal appellate courts, the Fifth, Seventh and Ninth Circuits, have indicated that a prison law library which does not contain the AEDPA limitation statute may constitute an impediment under § 2244(d)(1)(B). *See Moore v. Battaglia*, 476 F.3d 504, 507-08 (7th Cir. 2007); *Egerton v. Cockrell*, 334 F.3d 433, 438-39 (5th Cir. 2003); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148-49 (9th Cir. 2000)(en banc). It is clear, however, that "whatever constitutes an impediment must prevent a prisoner from filing his petition." *Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009)(quoting *Moore*, 476 F.3d at 506, further citation omitted). The inquiry is "highly fact-dependent." *Whalem/Hunt*, 233 F.3d at 1148.

Here, rule books with the AEDPA limitation statute were in the ASP law library when it reopened in about February 2002, but so too were outdated versions of the habeas statute without the limitation period. A contract attorney was available to talk to Mr. Bear. Though the attorney was not obligated to perform research, the attorney was required to confer with inmates and give advice to those who wished to file petitions for habeas corpus. Providing information about the limitation period for filing a habeas petition would seem to be a basic part of the contracted-for services; a simple, fundamental legal question which would not involve research beyond looking at the statute. Neither side produced testimony or an affidavit from any of the contract

attorneys to whom Mr. Bear had access while the limitation period was running, but the Court cannot assume the attorneys would have refused to advise him, or would have been unable to advise him, about the federal habeas limitation period or, at the least, tell him where to find it.

Mr. Bear did not know the AEDPA limitations clock began to tick after the Iowa Supreme Court declined further review of his direct appeal and the time to take the case to the U.S. Supreme Court expired. He did know generally about the exhaustion requirement. Mr. Bear may well have assumed that the time to file his federal petition would not begin to run until he filed his state PCR application and obtained a final decision. He did not realize, as some lawyers do not, that if he took full advantage of Iowa's three-year limitation period[5] to file a PCR application, his opportunity to seek federal habeas review could run out. (*See* Resp. Ex. G, Aff. of Attorney Catherine Levine concerning her unawareness of the AEDPA limitation period in relation to the three-year state PCR limitation period). Such a mistake, however, is not a state-created impediment. *Cf*. *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 1157 (2002)("Counsel's confusion about the applicable [habeas] statute of limitations does not warrant equitable tolling.").

---

[5] The Iowa PCR three-year limitation period is codified at Iowa Code § 822.3.

Mr. Piazza has denied he gave Mr. Bear advice about the federal habeas limitation period. Mr. Piazza likely did tell Mr. Bear about the three-year Iowa PCR limitation period as Mr. Bear's preparation to file a PCR application was what prompted him to contact Mr. Piazza. Even if Mr. Piazza did tell Mr. Bear he had one year after his state PCR proceedings were concluded to file his federal habeas petition, his erroneous advice would not amount to a state-created impediment. Mr. Bear had no constitutional right to the effective assistance of post-conviction counsel and Mr. Piazza was not a state actor. *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007).

Mr. Bear also claims that after speaking with Mr. Piazza he went to the law library to check the time lines Mr. Piazza had given him, and reviewed a 1994 version of the U.S. Code Annotated which did not contain the AEDPA one-year limitation period. Taking his testimony in this regard as true, the ultimate question comes down to whether, by maintaining a law library with accurate and inaccurate information about the habeas limitation period, the state created an unconstitutional impediment which prevented Mr. Bear from timely filing his habeas petition when it was the inaccurate information Mr. Bear obtained. When all the circumstances are considered, the Court is not convinced Mr. Bear's one-time review of an outdated version of the habeas statute was an impediment which prevented him from timely filing a habeas petition

within the meaning of the statutory tolling provision of §
2244(d)(1)(B). The facts remain that the prison law library
contained copies of the AEDPA limitation provision, prison
officials did not prevent Mr. Bear from accessing the statute, and
the prison provided a legal assistance program which made an
attorney available to advise Mr. Bear about filing a habeas
petition. By these means Mr. Bear was afforded an adequate
opportunity to file his petition on time. *See Lewis v. Casey*, 518
U.S. 343, 351 (1996); *Bounds*, 430 U.S. at 351.

### III.

### ORDER

It having been determined by proceedings on remand that
the Petition for a Writ of Habeas Corpus was untimely filed and the
statutory tolling provision of 28 U.S.C. § 2244(d)(1)(B) is
inapplicable, the Clerk shall re-enter judgment dismissing the
petition. Respondent's motion to dismiss on the limitations issue
is **granted**.

In view of the scope and purpose of the remand as
reflected in the Eighth Circuit's judgment, it may be that the
court of appeals would prefer that this Court certify its findings
to the Clerk of the Eighth Circuit. *See Earl*, 556 F.3d at 728
(directing district court to certify findings and conclusions
following further development of the record on a state-created
impediment issue). Accordingly, the Clerk of this Court shall

certify these Findings and Order to the Clerk of the United States
Court of Appeals for the Eighth Circuit.

       IT IS SO ORDERED.

       Dated this 5th day of April, 2010.


_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE

15